# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,      )
     )
     )
     )
**v.**      )      **Cr.A. No. 1306018766**
     )
     )
**THOMAS J. SANSONE,**      )
     )
**Defendant.**      )

Submitted: February 25, 2014
Decided: July 11, 2014

Danielle Brennan, Esquire
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 7th Floor
Wilmington, DE 19801
 *Attorney for State*

Richard B. Ferrara, Esquire
Ferrara & Haley
1716 Wawaset Street
Wilmington, DE 19806
 *Attorney for Defendant*

## DECISION ON DEFENDANT'S MOTION TO SUPPRESS

Thomas J. Sansone, (hereinafter "Defendant") was arrested on June 20, 2013, by the New Castle County Police and charged with Driving While Under the Influence of Alcohol; three (3) offenses of Failure to Stop for a Stop Sign; Drinking While Driving; Failure to Have Possession of Insurance and Registration Card; and Failure to Signal. Sansone filed this motion to suppress the blood analysis on the basis that the warrant obtained to draw the blood violates the implied consent provisions of *21 Del. C. 2740*, et

al., and the holding in *State v. Betts*, 2009 WL 388952 (Del. Super. 2009). The Court conducted a hearing and thereafter ordered post-hearing briefing on the matter.

## FACTS

The facts which are not in dispute as testified to by Officer Shelhorst of the New Castle County Police Department. He stated that on the afternoon of June 20, 2013, he was working pro-active patrol and traffic management in the area of Richardson Park. At approximately 6:40 p.m., he observed a vehicle make a right turn onto Glenrich Avenue without using its turn signal. The vehicle also disregarded a stop sign at the same intersection. Shelhorst followed the vehicle and observed several other traffic violations. Shelhorst was operating an ATV without emergency lights, which created difficulty in stopping the vehicle. He had to bang on the back of the defendant's vehicle in order to get his attention. Eventually, the defendant pulled his vehicle to the right side of the roadway with both right tires resting on the lawn of the adjacent residence.

Upon approach, Shelhorst observed an open container of beer in the defendant's cup holder. He also noticed that the defendant's eyes were bloodshot and glassy and detected an odor of alcohol. During their interaction, the defendant admitted to consuming between 6 and 10 beers that afternoon. Shelhorst attempted to conduct field sobriety testing, however, the defendant refused such testing, allegedly stating, "I would fail them." The defendant was then offered a portable breath test, which he also refused. Shelhorst advised the defendant that he was going to transport him back to police headquarters to administer an Intoxilyzer test, to which the defendant allegedly replied "I

2

would fail that test." The defendant was then taken into custody. The defendant was transported to New Castle County Police headquarters by Corporal Purse. At that time, Shelhorst drafted a warrant and responded to Justice of the Peace Court 11, where the warrant was signed by a Magistrate to draw blood. Shelhorst then returned to the New Castle County Police Department where he again made contact with the defendant.

During cross examination, Shelhorst confirmed that it was New Castle County Police standard operating procedure, to read the implied consent paragraph to all subjects who refuse the intoxilyzer test. Shelhorst testified that he did read the defendant the implied consent paragraph, after he returned to the station after securing a warrant. The defendant subsequently refused the intoxilyzer test. After defendant's refusal, Shelhorst had the phlebotomist draw his blood.

**ANALYSIS**

Sansone brings this motion pursuant to *Court of Common Pleas Civil Rule 12* to suppress the blood results. Sansone argues that the blood extraction from his body and subsequent analysis is not admissible because pursuant to *21 Del. C. § 2740* et al., and *State v. Betts*[1]. He alleged that when Officer Shelhorst read him the implied consent provision and he refused the test, such refusal was binding and the Officer could no longer proceed with the blood extraction. He further argues that the prohibition created in the statute is not changed or modified in any way because the Officer obtained a judicial search warrant prior to the time he was read the implied consent provision.

---

[1] *State v. Betts*, 2009 WL 388952 (Del. Super.)

The State argues that *Betts* does not apply and *21 Del. C. § 2740* is not applicable under these facts because the Officer obtained the search warrant prior to Sansone's refusal under the statute.

On a motion to suppress, the burden is on the State to establish by the preponderance of the evidence that the challenged search or seizure conformed to the rights guaranteed by the United States Constitution, the Delaware Constitution and Delaware statutory law. *State v. Anderson*, 2010 WL 4056130 (Del. Super. 2010).

Under *21 Del. C. 4177(a)(1)*, "[n]o person shall drive a vehicle . . . [w]hen the person is under the influence of alcohol." Under *4177(c)(5)*, "under the influence' shall mean that the person is, because of alcohol . . . less able than the person would ordinarily have been, either mentally or physically, to exercise clear judgment, sufficient physical control, or due care n the driving of a vehicle."

*Section 2740(a)* of Title 21 provides that, "Any person who drives . . . within this State shall be deemed to have given consent . . . to a chemical test or tests of that person's blood for the purpose of determining the presence of alcohol or a drug or drugs." Such testing shall be required of any person where the Officer has probable cause to believe the person was driving a vehicle, in violation of *21 Del. C. § 4177*. Under *§ 2741*, a person may refuse the test and under *§ 2742* where such person refuses, the test shall not be given but such refusal shall be reported to the Division of Motor Vehicles.

The Superior Court in *State v. Betts*, 2009 WL 388952 (Del. Super.) held that when reading *§ 2741* and *§ 2742* together:

> "The police have two routes they can choose when a
> driver refuses to submit to a chemical test. One route is for the

4

officer to take the test and not discuss any penalties or consequences for refusal found in *§ 2741(a)*. In the event the driver has refused the officer's request, the officer may still go ahead and take the test by invoking the statute set out in the second sentence of *§ 2742(a)* and laid out in full by *§ 2740(a)*. The officer is empowered to do this so long as he or she has probable cause to suspect a DUI and has not mentioned the penalties. In this scenario, the driver's refusal is inconsequential to the ability of the police to conduct chemical testing.

However, in the alternative, an officer can also choose to inform a driver who refuses to submit to chemical testing of the penalty of refusal. If, upon learning of the penalties the driver allows chemical testing, the test may be taken. However, if the driver still refuses to take the test after the officer recites the penalties, that officer must not take the test and can no longer use probable cause as a reason to do so. In sum, when penalties are discussed by the police with the suspected impaired driver, the driver is then empowered to refuse and that refusal becomes binding upon the officer.

Whichever option the officer employs, taking the test upon probable cause and no mention of the revocation consequences, or not taking the test because the driver still refuses testing after being informed of the revocation consequences, the officer, must certify certain information to the Secretary of Transportation. The information certified reflects the statutory dichotomy between the two options available to the police. That certification process also further demonstrates there is a bright line separating the two options the police have when confronted with a refusal to submit to a chemical test."

The facts here present a situation which is different than those present in *Betts*. Here, Officer Shelhorst before the defendant's refusal, applied for a search warrant to take blood as required under *Missouri v. McNeely*.[2] Applying the *Betts* analysis to these facts when the Officer made the application for the warrant, he elected to proceed with

---

[2] *Missouri v. McNeely*, 133 S. Ct. 1552, 2013 U.S. Lexis 3160 (Decided April 17, 2013) holding that a warrantless search of a person, where the search involved a completed physical intrusion beneath the skin and into the person's skin and into the person's veins to obtain a blood sample to use as evidence in a criminal investigation is prohibited except where there exists exigent circumstances. Whether exigency exists is to be determined case-by-case based upon the totality of the circumstances.

5

the forced blood draw. The second option was no longer available to the Officer nor the defendant, because the application for the search warrant clearly indicates an intent by the Officer to proceed with the forced chemical testing. In this instance, if the warrant is granted, the Officer can proceed to extract the blood. In the event the warrant application is denied, the State is left to proceed on the facts they have developed at that point, and the State is not permitted to go back to an alternative position which involves the defendant's refusal.

Thus here, when the Officer had made application for the warrant, the Officer is prevented from reading the impaired consent provision with penalties for refusal. Any further discussion on this issue of refusal between the Officer and the defendant is not relevant to the analysis of the election of refusal.

Accordingly, the motion to suppress the blood draw and analysis is denied. Clerk shall schedule the matter for trial.

SO ORDERED

_____
Alex J. Smalls
Chief Judge

Sansone-DECISION July 2014

6